ECF CASE

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
**J & J SPORTS PRODUCTIONS, INC.,** as
Broadcast Licensee of the **May 5, 2007**
**DeLaHoya/Mayweather** Program,

                              Plaintiff,

                                             **PLAINTIFF'S AFFIDAVIT**

    -against-

                                             Civil Action No.07-CV-8853-NRB-MHD
                                             HON. NAOMI REICE BUCHWALD

MARIA PAULINO *et, al.*,
                      Defendants.
--------------------------------------------------------
STATE OF CALIFORNIA    }
                       }ss.:
COUNTY OF SANTA CLARA}

        JOSEPH GAGLIARDI, being duly sworn, deposes and states the following:

        1.      I am President of Plaintiff, J&J Sports Productions, Inc., and, as such, am fully

familiar with the facts, circumstances and proceedings heretofore had herein.

        2.      I make this Affidavit in support of Plaintiff's request to recover statutory

damages, including costs, attorney fees and interest in the within request for judgment by default.

        3.      Plaintiff, J&J Sports Productions, Inc., owns the rights for the commercial

distribution of the DeLaHoya/Mayweather fight which was held on May 5, 2007. The licensing

agreement is attached hereto as Exhibit "A". My company thereafter marketed the sub-licensing

of the broadcast to commercial establishments in the State of New York for a fee. The Rate Card

for this event is attached hereto as Exhibit "B".

        4.      Prior to the  DeLaHoya/Mayweather, broadcast, J&J Sports Productions, Inc., hired

Signal Auditing, Inc. to contract with independent auditors who were assigned to identify

establishments that unlawfully exhibited our program.

5.    To insure that only illegal locations were visited by the auditors, a list of authorized and legal locations who paid the required fee to broadcast the DeLaHoya/Mayweather fight which was held on May 5, 2007, was distributed to Signal Auditing, Inc., who provided same to all of their contracting auditors prior to visiting any unauthorized locations on May 5, 2007. This list is attached hereto as Exhibit "C".

6.    Defendants MARIA PAULINO, Individually, and d/b/a ANA COFFEE SHOP a/k/a MARIA PAULINO RESTAURANT a/k/a ANNA RESTAURANT, did not purchase the rights to exhibit the event from my company.

7.    According to our files, Jeanette Rodriguez, one of the auditors, visited Defendant's establishment, Anna Restaurant located at 8 West Tremont Ave. Bronx, NY, on May 5, 2007, at approx. 11:17 pm. She entered and observed one (1) television sets exhibiting a portion of the event to about 25 patrons in an establishment with an estimated capacity of 75. The auditor's affidavit attesting to these facts is attached as Exhibit "D".

8.    Defendant's showing was not authorized by J&J Sports Productions, Inc., therefore, the said showing was in violation of the Piracy Statutes of the Federal Communications Act.

9.    It is essential that I communicate to the Court that to the best of my knowledge this programming is not and cannot be "mistakenly or innocently intercepted." Some methods that a signal pirate can unlawfully intercept and broadcast such program illegally are as follows without limitation:

A.    The use of a "black box" which is purchased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or

B.      The purposeful misrepresentation of a commercial establishment as a residential property would allow the purchase of a pay-per-view broadcast for the event at the residential price of $54.95, or

C.      The use of a illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises who would purchase the broadcast at a residential price and divert the program to the commercial establishment and/or

D.      The same initial actions being employed with respect to a "DSS Satellite Systems" or a "C-Band Satellite System."

These forms of satellite theft also involve the misrepresentation of a residential location, purchase of illegal unincryption devices, and/or the purchase of illegal satellite authorization codes which are readily available on the Internet and in various publications which are presently unregulated in the Nation of Canada.

10.     To explain the history of Plaintiff's claim, your deponent submits that shortly after the advent of Pay-Per-View broadcasts, of which our company stands at the forefront, we began to experience a serious erosion of the sales to commercial establishments throughout the United States of America.  Thereafter, we endeavored to find out what was the basis for the erosion. Much to our disappointment, we discovered that the root cause of the erosion of our customer base was the piracy of our broadcasts by unauthorized and unlicensed establishments.

11.     Plaintiff has invested millions of dollars in the promotion of  boxing broadcasts, and, with the increased frequency of signal piracy, our legal sales have eroded significantly.

12.     In response, we embarked upon a program which was designed to identify and prosecute the commercial establishments which stole our broadcasts.

13.     Turning these facts to the matter before the Court, I have been advised by counsel

that the Court has the discretion in the awarding of damages for these nefarious and illegal
activities.

14.    It is respectfully submitted to this honorable Court that the unchecked activity of
signal piracy not only has resulted in my business being severely damaged, but also has a
negative effect upon lawful residential and commercial customers of cable and satellite
broadcasting whose costs are necessarily increased significantly by these illegal activities.

15.    I believe that such acts of piracy have cost my company millions of dollars in the
last few years, while at the same time causing a reduction in our lawful business resulting from
the perceived lack of consequence for such unlawful interception.

16.    I, therefore, humbly ask this Court to grant the maximum allowance for
statutory damages due to the fact that such actions are *per se* intentional and do not and cannot
occur without the willful and intentional modification of electronic equipment, the business
misrepresentation of a commercial establishment as residential, or, the removal of cable traps
and/or devices designed to prevent such unauthorized exhibits.


**WHEREFORE,** your deponent respectfully requests that this Court in its discretion
grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the
Defendants jointly and severally as follows:

**Against MARIA PAULINO, Individually, and d/b/a ANA COFFEE SHOP a/k/a
MARIA PAULINO RESTAURANT a/k/a ANNA RESTAURANT,**

   1) under 605(e)(3)(C)(i)(II) a  sum *in the discretion of the Court*, of up to
     TEN THOUSAND DOLLARS ($10,000.00)

   2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of up to
     ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced
     damages for Defendant's willful violation of 605(a)

3)    and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit.

**Against, ANA COFFEE SHOP a/k/a MARIA PAULINO RESTAURANT a/k/a ANNA RESTAURANT**

1)    under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2)    and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)    and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit

Dated: January *17* , 2008

JOSEPH GAGLIARDI,
President, J&J Sports Productions, Inc.

Sworn to before me on this *17* day
of January    , 2008.

Notary Public- State of California



Exhibit A

GOLDEN BOY PROMOTIONS, INC.
626 Wilshire Boulevard, Suite 950
Los Angeles, California 90017
(213) 489-5631 (Telephone)
(213) 489-4057 (Facsimile)


April 11, 2007


J&J Sports Productions, Inc.
2380 South Bascom Avenue, Ste. 200
Campbell, CA 95008
Attention: J.M. Gagliardi


RE:   CLOSED CIRCUIT TELEVISION LICENSE AGREEMENT

Oscar De La Hoya vs. Floyd Mayweather

Plus selected undercard bouts
(fighters subject to change)

May 5, 2007
MGM Grand Garden Arena, Las Vegas, NV

Gentlemen:

This will confirm the terms of our agreement whereby GOLDEN BOY PROMOTIONS, INC. (referred to herein as "Promoter") hereby grants to J&J Sports Productions, Inc ("J&J" or "you" or "Licensee") the exclusive license to exhibit, only within the fifty states of the United States of America and the Commonwealth of Puerto Rico (the "Territory"), Promoter's live telecast of the captioned bout and accompanying undercard matches (the "Event"), simultaneously with the Event, only at commercial closed-circuit television exhibition outlets, such as theaters, bars, clubs, lounges, restaurants and the like, each with a fire code occupancy capacity not to exceed 500 persons per outlet (except for casinos), located within the Territory. The exhibition rights granted herein do not include any rights in Mexico, Canada or Clark County, Nevada, or transmissions to hotel guest rooms, in-flight aircraft or other transportation facilities.

1.    License Fee. As full and complete compensation for the rights granted you by Promoter, you shall pay to Promoter the license fee calculated as follows:

The Minimum Financial Guarantee of . .          as provided in
                                                of the amount of all
gross revenues received by Licensee in excess of the first

which Licensee receives from all closed circuit television exhibitions of the Event in the Territory.

(a)    All amounts which are to be deducted or withheld by your sublicensee exhibitors, sales agents or distributors from payments to you or your sublicensees shall be subject to the mutual agreement of Promoter and Licensee but shall not exceed        of gross revenues from each outlet from exhibition of the Event.

(b)    The calculation of gross revenues under this Paragraph shall not include the amount of any fees or taxes referenced in Paragraph 12 of the attached Closed Circuit Television Standard Terms and Conditions paid or required to be paid by Licensor.

(c)    In the event that you should sublicense an outlet for a fixed lump sum or for a license fee which includes a guaranteed amount which is not exceeded by your share of revenues from that outlet, you shall include in gross revenue hereunder the amount equal to such lump sum or guarantee.

(d)    You shall be entitled to deduct and withhold, for advertising and publicity purposes,        of gross revenues from exhibition locations which you license directly to operators without any commission or distribution fee to third party sales agents or distributors.

(e)    Promoter shall be responsible for the cost of advertising materials, such as posters, press kits and slides, in amounts and quantities to be mutually agreed upon by Promoter and Licensee. In the event that Promoter fails to provide an adequate amount of posters, advertising slicks, press kits, etc., then Licensee shall be entitled to retain        toward such expenses.

Payment of all license fee amounts in excess of the Minimum Financial Guarantee shall be due and payable to Golden Boy Promotions, Inc. no later than ten (10) business days after the Event.

2.    <u>Minimum Financial Guarantee.</u> As a minimum guarantee and non-refundable advance against the monies due to Promoter pursuant to Paragraph 1 of this agreement, Licensee shall pay to Promoter the        by delivery to Golden Boy Promotions, Inc. not later than May 4, 2007 by either:

(a)    a certified check or bank cashier's check payable to Golden Boy Promotions, Inc. in such amount; or

(b)    an irrevocable letter of credit payable to Golden Boy Promotions, Inc. in such amount, subject to collection. Such letter of credit shall be collateral security for your payment of such minimum financial guarantee, shall be issued or

confirmed by a member bank of the U.S. Federal Reserve System, which bank shall be subject to the advance approval of Golden Boy Promotions, Inc. in its discretion.

3.    Compatible Decoding Equipment.    You and your sublicensees shall be responsible to obtain, at your or their cost and expense, either

(a)    Authorization to receive the Event through the services of one or more direct satellite suppliers ("DSS"), such as DirecTV or Echostar, to be selected by you; or

(b)    If Promoter licenses TVN to distribute the Event by C-Band and so notifies Licensee, authorization to receive the Event through TVN.

DSS and TVN, if applicable, shall be responsible for the encoding and decoding of their retransmitted signals. You shall not charge decoder rental or authorization fees to your sublicensees in excess of      per decoder or authorization. Any additional equipment charges to your sublicensees shall be at your cost.

4.    Addressing of Decoders.

(a)    Promoter, at its sole cost, shall deliver the encrypted transmission of the video and audio signal of its telecast of the Event either (1) to a domestic satellite or other delivery point from which the signal is capable of being received by DSS and TVN, for redistribution to your designated outlets or (2) by fibre optic cable to a delivery point at which the signal is capable of being received by DSS and TVN, for redistribution to your designated outlets. DSS and TVN, if applicable, shall have the responsibility to address and authorize decoders for your authorized sublicensees. You shall be responsible for all charges for addressing and authorizing your sublicensees.

(b)    Promoter shall have no responsibility for your decoder authorization fees, and Promoter shall have no responsibility or liability to you or your sublicensees for any technical failures which may occur in connection with the authorizing of decoders for your sublicensed closed circuit exhibition outlets or in connection with any retransmission or authorizing by DSS or TVN.

(c)    You shall instruct DSS and TVN, if applicable, to provide directly to Promoter, on the fifth business day after the Event Date, their complete final authorization reports which shall indicate the name, address and city of each authorized outlet and the decoder number for each authorized outlet. You shall also instruct any cable television system which you may retain to authorize outlets, and you shall instruct any of your sublicensees which retain cable systems for such purpose, to provide Promoter with the same reports of authorized outlets on the fifth business day after the Event Date.

5.    Pay-Per-View Exhibitions.

You acknowledge that Promoter shall license the live cable television and direct broadcast satellite television exhibition of the Event in the Territory on a residential pay-per-view basis and that you shall have no interest or participation in such pay-per-view exhibition or any other exploitation of the Event, other than commercial closed circuit television exhibition rights granted to you as set forth herein.

6.    Anti-Piracy.

Licensee shall have the exclusive right to commence or settle any claim or litigation arising out of the alleged piracy, use or proposed use of the closed circuit television telecast in the Territory. Any damages, whether statutory, compensatory, punitive or otherwise, which Licensee may recover from the theft, piracy, copying, duplication, unauthorized exhibition or transmission of the Event in the Territory, after payment of reasonable legal fees, costs and disbursements, shall constitute gross revenues from the Event, to be shared by Promoter and Licensee as set forth herein. Licensee shall advance any required legal fees and disbursements, subject to recoupment from any applicable recovery, and shall report all expenses, settlements and recoveries to Promoter on a quarterly basis. Your sublicensees shall have no right to commence or settle any claim or litigation arising out of the alleged piracy of the telecast hereunder, and you shall not assign these anti-piracy rights to any other party, without the prior written consent of Promoter. Notwithstanding the foregoing, in the event that you elect not to pursue any claim or litigation arising out of the alleged piracy, use or proposed use of the closed circuit television telecast in the Territory, you shall, upon Promoter's request, assign the exclusive right to pursue such claims or litigation to Promoter. In the event of such an assignment, Promoter shall be solely responsible for payment of all legal fees and disbursements and shall be entitled to retain as its exclusive property any and all recoveries therefrom, and Licensee shall be released and relieved of and from any anti-piracy obligations referenced above in connection with the applicable claims or litigation.

7.    Private Showings. Promoter shall have the right, at its cost and expense and upon written notice to you, to conduct or authorize others to conduct up to ten (10) complimentary private showings of the telecast of the Event within the Territory, with no admission charge and no advertising or advance publicity for such private showings.

8.    Attachments. Annexed to this agreement as exhibits are the following documents, the terms and conditions of which are incorporated herein as if set forth in their entirety:

(a)    Closed Circuit Television Sublicense Agreement which you and your sublicensee shall complete and sign with respect to each closed circuit television outlet you may sublicense.

(b)   Closed Circuit Television Standard Terms and Conditions which shall apply to this agreement as well as to the Closed Circuit Television Sublicense Agreement. YOU SHALL ATTACH A COPY OF THE STANDARD TERMS AND CONDITIONS TO EACH SUCH SUBLICENSE AGREEMENT.

9.    Defaults.

(a)   Your failure to deliver the Minimum Financial Guarantee as provided in Paragraph 2 hereof or to pay the license fee as provided in Paragraph 1 hereof or to pay the signal delivery fees or equipment expenses as provided in Paragraph 3 hereof or to comply with any other material term or condition of this agreement shall permit Promoter, in addition to all of its other rights and remedies, to cancel this agreement with you at any time without any further liability or obligation to you and to retain all monies paid to Promoter prior to such cancellation, provided, however, that before Promoter may exercise any remedy with respect to any such default, Promoter must (i) provide Licensee with written notice specifying such default and (ii) if and to the extent that time reasonably permits prior to the Event, provide Licensee with up to seven (7) days after Licensee's receipt of such default notice within which to cure such default.

(b)   If, in violation of the provisions of this agreement, you or a sublicensee exhibits the Event in an outlet with a fire code occupancy limit in excess of 500 persons (except casino locations), then Licensee shall remit upon demand by Promoter the license fee for such outlet as provided in Paragraph 1.

10.    No Packaging with Other Events.

You shall not sublicense closed-circuit television rights to the Event to exhibitors as part of a package which includes other boxing programs or bouts not included in this Event without the prior written consent of Promoter.

11.    Reports, Collection and Accounting.

(a)   You shall be responsible for collection of all monies from outlets, and shall make all payments and provide all reports and shall provide Promoter with copies of all reports received from sublicensed outlets. You shall distribute to Promoter all amounts due for exhibition rights to the Event, with no deductions, set-offs or holdbacks whatsoever, except as otherwise provided herein.

(b)   You shall also provide separate reports no later than five business days following the Event, including the name, location and license fee for each closed circuit exhibition outlet.

(c)   Promoter's representatives shall have the right to visit your offices and each outlet at any time during normal business hours prior to the Event and after the Event to obtain and verify such information, in person or

electronically, and to make arrangements for the payment of all license fees due to Promoter promptly following the Event.

All checks shall be payable to, and contracts and reports shall be sent to:

Golden Boy Promotions, Inc.
626 Wilshire Boulevard, Suite 850
Los Angeles, California 90017
Attn: Raul Gutierrez

With a copy to:

Ziffren, Brittenham et al.
1801 Century Park West
Los Angeles, California 90067
Attn: Stephen Espinoza

12.    Entire Agreement. This agreement supersedes and terminates all prior agreements between the parties hereto and their affiliates with respect to the subject matter contained herein, and this agreement embodies the entire understanding between the parties relating to such subject matter, and any and all prior correspondence, conversations and memoranda are merged herein and shall be without effect hereon.  The laws of the State of California applicable to contracts executed and to be fully performed in the State of California shall govern this agreement, and execution of this agreement shall constitute the consent of Licensee and any sublicensee to exclusive jurisdiction and venue of the State Courts and United States Courts sitting in the County of Los Angeles, State of California and to service of process pursuant to applicable sections of the California law with respect to matters arising under such agreement.

Very truly yours,

GOLDEN BOY PROMOTIONS, INC.

By:_____
      Authorized Signature

Please confirm your agreement with the above by signing and returning the attached copy of this letter. This Television License Agreement shall not become

6126.1.10
April 16, 2007

-6-

SEE/SEE
384107.1

effective unless and until Promoter has accepted and signed this agreement and returned one copy to you.

ACCEPTED AND AGREED:

J&J Sports Productions, Inc.

By: _____

APRIL 20, 2007

Title: ___ PRESIDENT _____

Exhibit B



## www.boxingseries.com
# SPORTS PRODUCTIONS INC.

### Closed Circuit Rate Card
# Saturday, May 5, 2007 6:00 PM PT
**From MGM GRAND GARDEN ARENA Live on Pay-Per-View**

### MAIN EVENT-12 ROUNDS-
~ WBC Light Middleweight Title ~

## Oscar DE LA HOYA
Los Angeles, CA Light Middleweight 38-4 | 30 KOs

VS,

## Floyd MAYWEATHER
Las Vegas, NV Light Middleweight 37-0 | 24 Kos

***Fights are subject too change***

A NON-REFUNDABLE MINIMUM GUARANTEE OF $2200.00 Plus $20.00 Per Person Above 100.

| MINIMUM SEATING | RATE |
|---|---|
| 0 – 100 | 2200.00 |
| 101 – 200 | 4200.00 |
| 201 – 300 | 6200.00 |
| 301 – 400 | 8200.00 |
| 401 – 500 | 10200.00 |

**Casinos minimum guarantee of $7700.00 Plus $30.00 Per Person Above 250.**
**Minimum room capacity 250 People per casino.**

- Directv Activation is included
- Commercial Public Viewing and Business Viewing pricing for this event is based on Fire Code Occupancy.

Closed Circuit Information
**All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, J&J Sports Productions Inc.. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.**

For further information regarding multiple locations packages contact

Art Gallegos
National Sales Manager
1-888-258-7116

2380 South Bascom Avenue, Suite 100 ● Campbell, CA 95008 ● Tel: (408) 369-8022 ● Fax: (408) 369-8096

Exhibit C

| Name | Address | City | State | Zip |
|---|---|---|---|---|
| Jillian's of Las Vegas | 450 Fremont St. Space #130 | Las Vegas | NV | 89101 |
| Luxor Hotel and Casino | 3900 Las Vegas Blvd. South | Las Vegas | NV | 89119 |
| Mandalay Bay Resort and Casino | 3950 Las Vegas Blvd. South | Las Vegas | NV | 89119 |
| MGM Grand Casino | 3799 Las Vegas Blvd. | Las Vegas | NV | 89109 |
| Mirage Sports Book | 3400 Las Vegas Blvd. South | Las Vegas | NV | 89109 |
| Mirage Sports Book | 3400 Las Vegas Blvd. South | Las Vegas | NV | 89109 |
| Monte Carlo Resort & Casino | 3770 Las Vegas Blvd South | Las Vegas | NV | 89109 |
| New York, New York - Casino | 3790 Las Vegas Blvd. S. | Las Vegas | NV | 89109 |
| Sam's Town | 5111 Boulder Hwy | Las Vegas | NV | 89122 |
| Silver Saddle | 2501 E. Charleston Blvd | Las Vegas | NV | 89104 |
| Treasure Island | 3400 Las Vegas Blvd. South | Las Vegas | NV | 89109 |
| Vertigo | 2025 E. Charleston Blvd. | Las Vegas | NV | 89101 |
| Edgewater Hotel Corp. | 2020 S. Casino Dr. | Laughlin | NV | 89029 |
| Ramada Express Hotel & Casino | 2121 S. Casino Dr | Laughlin | NV | 89028 |
| The Aquarius | 1900 S. Casino Dr | Laughlin | NV | 89029 |
| The Riverside Resort | 1650 Casino Drive | Laughlin | NV | 89029 |
| Harrah's Laughlin Casino | 2900 South Casino Dr. | Laughlin | NV | 89029 |
| Atlantis Casino | 3800 South Virginia | Reno | NV | 89502 |
| Bully's | 5162 Meadowood Mall Circle | Reno | NV | 89502 |
| Bully's #7 | 1640 Robb DR. | Reno | NV | 89523 |
| Bully's Sports Bar #1 | 2005 Sierra Highlands | Reno | NV | 89523 |
| Club Cal-Neva Casino | PO Box 2071- 38 East 2nd st. | Reno | NV | 89501 |
| Eldorado Casino | 345 N. Virginia | Reno | NV | 89501 |
| New Oasis Rest. | 325 Circle Dr. | Reno | NV | 89509 |
| Peppermill Hotel & Casino-Bill Hughs | 2707 S. Virginia St | Reno | NV | 89510 |
| Silver Legacy Hotel & Casino | 407 N. Virginia Ave. | Reno | NV | 89501 |
| The Mens Club | 270 Lake Street | Reno | NV | 89501 |
| Bully's Sports Bar #3 Christine | 2955 N. Mccarran #110 | Sparks | NV | 89431 |
| John Ascuaga's Nuggett Casino | 1100 Nuggett Ave. | Sparks | NV | 89431 |
| Harveys Tahoe Management Co. Inc. | P.O. Box 128/ Hwy 50 @ Stateline | Stateline | NV | 89449 |
| Montbleu Casino | 55 Hwy 50 | Stateline | NV | 89449 |
| Boomtown Casino | Garson Rd. @ Interstate 80 | Verdi | NV | 89439 |
| Simply Fish & Jazz | 147 South Pearl | Albany | NY | 12202 |
| Boston Pizza | 37-02 Broadway | Astoria | NY | 11106 |
| Forum | 3419 Steinway St. | Astoria | NY | 11101 |
| McCanns Pub | 36-15 Ditmars Blvd | Astoria | NY | 11105 |
| Ritnus | 3223 Steenway St. | Astoria | NY | 11103 |

| Name | Address | City | State | Zip |
|---|---|---|---|---|
| Zone Sports Restarant & Lounge | 28-43 Steinway St. | Astoria | NY | 11101 |
| Bridges | 4100 E. Treemont | Bronx | NY | 10465 |
| Dugout, The | 880 River Ave | Bronx | NY | 10451 |
| El Tejano | 2031 Westchester Ave. | Bronx | NY | 10451 |
| El Tenampa Restaurant | 2765 Webster Ave. | Bronx | NY | 10457 |
| Game Day Grill | 3168 East Tremont Ave. | Bronx | NY | 10461 |
| La Fortuna Restaurant | 400 Claremont Pkwy. | Bronx | NY | 10457 |
| Lounge, The | 4665 Manhattan College Parkway | Bronx | NY | 10471 |
| Mi Gente Cafe | 1306 Union Port Rd. | Bronx | NY | 10462 |
| Paquita's Bar & Rest | 1862 Weschesta | Bronx | NY | 10472 |
| Rey De Copas | 2712 White Plaines Rd. | Bronx | NY | 10467 |
| Sin City Cabaret | 2520 Park Avenue | Bronx | NY | 10451 |
| Sports Plus Cafe | 1161 Castle Hill Ave. | Bronx | NY | 10462 |
| 200 Fifth | 200 5th Ave. | Brooklyn | NY | 11217 |
| Acapulco Bar Rest. | 4402 3rd Ave. | Brooklyn | NY | 1E+05 |
| El Yunque Bar & Grill | 507 Grand St. | Brooklyn | NY | 11211 |
| La Guarida | 369 36 st. | Brooklyn | NY | 11232 |
| La Nortena #5 | 758 5th Avenue | Brooklyn | NY | |
| Los Bollnitos | 499 Myrall Ave. | Brooklyn | NY | 11205 |
| TSB Restaurant | 887 Nostrend Ave | Brooklyn | NY | 11225 |
| Mucahys @ Centereach | 1702 Middlecountry Rd. | Centereach | NY | 11720 |
| La Nortena #4 | 97-13 37th. Ave. | Corona | NY | 11368 |
| Los Tres Potrillos | 111-16 Roosevelt Ave. | Corona | NY | 11368 |
| Cobblestones | 117-18 Queens Blvd. | Forrest Hills | NY | 11375 |
| Gallilitos | 24 New Main St. | Haverstraw | NY | 10927 |
| Avenue D Bar | 628 Fulton Ave. | Hempstead | NY | 11550 |
| Pollos Mario | 75 North Frankyln | Hempstead | NY | 11550 |
| Abuelo Gozon | 7903 Roosevelt Ave. | Jackson Heights | NY | 11372 |
| Cafe Espana | 81-03 Roosevelt Ave. | Jackson Heights | NY | 11372 |
| Chib Cha | 7905 Roosevelt Avenue, 5th Floor | Jackson Heights | NY | 11372 |
| Dolphin Sports Bar | 8513 Northern Blvd. | Jackson Heights | NY | 11372 |
| El Rumbero Bar & Restaurant | 82-05 Northern Blvd. | Jackson Heights | NY | 11372 |
| La Bamba - Jamaica | 144-32 Hillside Ave. | Jamaica | NY | 11435 |
| La Camisa Negra | 149-15 Jamaica Ave. | Jamaica | NY | 11435 |
| Austins Ale House | 82-70 Austin St. | Kew Gardens | NY | 11415 |
| McCanns Pub #2 | 5590 Merrick Road | Massapequea | NY | 11758 |
| Sue Rendevous | 96 Gramatan Ave. | Mt Vernon | NY | 10055 |

| Clubhouse Bar & Grill | 191 South Main St. | New City | NY | 10956 |
|---|---|---|---|---|
| 1050 Restaurant & Lounge | 735 Tenth Ave. | New York | NY | 10019 |
| 3rd & Long | 523 3rd Ave. | New York | NY | 10016 |
| 40 40 Club | 6 West 25th St. | New York | NY | 10010 |
| Beckys Pub | 1156 1st Ave | New York | NY | 10021 |
| Bounce Deuce Downtown | 103 Second Ave. | New York | NY | 10003 |
| Bounce Deuce Uptown | 1403 Second Ave. | New York | NY | 10021 |
| Fashion 40 Lounge | 202 W. 40th St. | New York | NY | 10018 |
| Firm | 90 Fulton St. | New York | NY | 10038 |
| Garden Cafe | 2026 2nd Ave. | New York | NY | 10029 |
| Harlem Lanes | 2116 Adam Clayton Powell Blvd. | New York | NY | 10027 |
| Joe Os | 136 W. 33rd St. | New York | NY | 10001 |
| Justins Restaurant | 31 West 21st St. | New York | NY | 10010 |
| Los Dos Potrillos | 1166 Evergreen Ave. | New York | NY | 10472 |
| Mi Palenque | 154 E 112 St. | New York | NY | 10029 |
| MJ Armstrongs | 329 First Ave. | New York | NY | 10003 |
| Monkey Room | 589 Fort Washington Ave. | New York | NY | 10033 |
| Mustang Sallys | 324 7th. Ave. | New York | NY | 10001 |
| Nevada Smiths | 74 Third Ave. | New York | NY | 10003 |
| Novo Restaurant | 299 Hudson St. | New York | NY | 10013 |
| OFlanagans | 1215 First Avenue | New York | NY | 10021 |
| Olmeca Restaurante "Olmece" | 322 E. 116 St. | New York | NY | 10029 |
| Picante | 3424 Broadway | New York | NY | 10031 |
| Playwright | 202 W. 49th St. | New York | NY | 10019 |
| Queen Of Hearts | Pier 40 @ Houston St | New York | NY | 10014 |
| Redemption Grill | 1003 Second Ave. | New York | NY | 10022 |
| Scores @ New York East | 333 East 60th Street | New York | NY | 10022 |
| Scores @ West | 533 West 27th St. | New York | NY | 10001 |
| The Monkey Bar | 589 Ford Washington Ave. | New York | NY | 10033 |
| Tonic Bar @ East | 411 3rd Ave. | New York | NY | 10016 |
| Village Pour House | 64 3rd Ave. | New York | NY | 10003 |
| Yankee Clipper | 170 John St.. | New York | NY | 10038 |
| 40 40 Club | 6 West 25th St. | New York | NY | 10010 |
| Players of Niagara | 328 Niagara St | Niagara Falls | NY | 14303 |
| Main Event | 799 Old Country Rd. | Plainview | NY | 11803 |
| Los Remolinos | 123 N. Main St. | Port Chester | NY | 10573 |
| La Nortena #6 | 102-14 Roosevelt Ave. | Queens | NY | 11368 |

| Killarneys Cottage | 63-28 Woodhaven Blvd. | Rego Park | NY | 11374 |
|---|---|---|---|---|
| Nathaniels | 251 Exchange Blvd. | Rochester | NY | 14608 |
| Woodys | 250 Monroe Ave. | Rochester | NY | 14607 |
| Lions Den Sports Bar | 17 Page Ave. | Staten Island | NY | 10309 |
| Full of Pep | 4126 Greenpoint Ave. | Sunnyside | NY | 11104 |
| Champps @ Rochester | 819 Eastview Mall | Victor | NY | 14564 |
| Mulcahys | 3234 Railroad Avenue | Wantagh | NY | 11793 |
| El Passiones | 4004 68th St. | Woodside | NY | 11377 |
| Paraiso | 7004 Roosevelt Ave. | Woodside | NY | 11377 |
| Passions Sports Bar | 40-04 69TH Street | Woodside | NY | 11377 |
| Club La Raza | 239 New Main Street | Yonkers | NY | 10701 |
| Pier View | 283 Roberts Ave | Yonkers | Ny | 10703 |
| Jillian's | 363 S. Main St. | Akron | OH | 44311 |
| Fox & Hounds @ Beavercreek | 2661 Fairfield Commons | Beavercreek | OH | 45431 |
| Harpos Sports Cafe | 5777 Smith Rd. | Brookpark | OH | 44142 |
| Fox & Hounds @ Canton | 4770 Everhart St. | Canton | OH | 44718 |
| Sullys | 700 Race St | Cincinatti | OH | 45202 |
| Club Oasis | 1752 Seymour Ave. | Cincinnati | OH | 45237 |
| Beachcomers | 1146 Old River Rd. | Cleveland | OH | 44113 |
| Lancers Steakhouse | 7707 Carnegie Ave. | Cleveland | OH | 44103 |
| Jillian's of Cleveland | 12459 Cedar Rd | Cleveland Heights | OH | 44106 |
| Drink | 4510 Kenny Rd. | Columbus | OH | 43220 |
| Gallos | 5019 Olentangy River Rd. | Columbus | OH | 43214 |
| Paninis @ Columbus | 1716 N High St. | Columbus | OH | 43201 |
| Fox & Hounds @ Dayton | Washington Park Plaza 667 Lyons Rd. | Dayton | OH | 45459 |
| Spectators Bar & Grill @ Dublin | 3535 W Dublin Granville Rd | Dublin | OH | 43235 |
| Fox & Hounds @ Mason | 5113 Bowen Dr | Mason | OH | 45040 |
| Brick Street | 36 East High St. | Oxford | OH | 45056 |
| Scorekeepers | 6395 Pearl Rd. | Parma Heights | OH | 44130 |
| TKO | 45 South Washington | Tiffin | OH | 44883 |
| Jillian's of Youngstown | 7401 Market St. | Youngstown | OH | 44512 |
| Buffalo Wild Wings @ Broken Arrow | 1151 North 20th | Broken Arrow | OK | 74012 |
| Fox & Hounds @ Broken Arrow | 7001 S Garnett Road | Broken Arrow | OK | 74012 |
| Buffalo Wild Wings @ Edmond | 1333 N. Santa Fe | Edmond | OK | 73003 |
| Buffalo Wild Wings @ Moore | 2601 S. 135 Frontage Rd. | Moore | OK | 73169 |
| Cross Eyed Moose Sports Cantina | 10603 S Western Ave. | Oklahoma City | OK | 73170 |
| Fox & Hounds @ Oklahoma City | 3031 W Memorial Road | Oklahoma City | OK | 73134 |

Exhibit "D"

## PPV BOXING PIRACY AFFIDAVIT

**STATE OF**            :
                        :
**COUNTY OF**          :

I, the undersigned, being duly sworn according to law, deposes and says, that on **May 5,2007** , I entered the commercial establishment known as **Anna Restaurant**, located at **8 West Tremont Avenue, Bronx  NY , Zip** 10453, at approximately **11:17** pm.  This establishment is described as a **2** story building with no apartment(s)  on top of the establishment.  **I did** observe a satellite dish on the premises.

I paid the sum of $ _N/A_____ cover charge  to enter the establishment.  The doorperson is described as : __N/A.

I ordered nothing from the waiter, whose name was unknown and is described as a hispanic female, wearing a white shirt and brown skirt.

I observed **01** television sets, which are described as: size 19 inch   make_unknown each of which is located in the following position within the establishment **at the front entrance near the door.**

On the television sets  I observed the  **discussion**  of the match before the following main event fighters **Delahoya vs. Mayweather.**

I also observed **the following action in the Ring:**

**Discussion between Lenox Lewis wearing a suit and two announcers in tuxedos. This discussion takes place at a table with the boxing ring behind them in the distance.**

I also observed the following Pay Per View Logo on the screen: **Gold HBO PPV logo is shown when announcer James Brown speaks.**

I was **not able** to see the cable box or the channel that the televisions were tuned to.

The inside of the establishment can be described as follows: _**A typical restaurant that serves food and alcoholic beverages .**

piracy affidavit page -2-

In my opinion, the approximate capacity of this establishment is 75 people. At the time I was in the establishment, I took three head counts. I counted approximately 25 people on the first count, 25 people on the second count, and 25 people on the third count.

I left the establishment at approximately 11:25 pm.

I took two (2) pictures of the outside of the above described establishment **on May 21, 2007 and at approximately 11:35_am** which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

There was not a parking lot adjacent to the establishment in which I noted the following vehicles by their make/model/ color and license plates :

___N/A_____          _____

_____          _____

_____          _____

_____          _____

Dated: _May 31_ , 2007

Signed: _____
Print Name: Jeanette Rodriguez
Agency:
Address:    90 Connors Road
City/State/Zip: Middletown, NY 10941
Phone/fax:    (914)850-2769
PI #

State of _New York_
               ) ss.:
County of _New York_ )
On the _31_ day of _May_ , 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared, _Jeanette Rodriguez_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STEPHEN D. RUSSO
Notary Public, State of New York
No. 31-4705013
Qualified in New York County
Commission Expires July 31,

© Signal Auditing, Inc.



07-4-S17



MAY 21 2007